Mr. Lennie. Okay. Next case is number 17-10-08. Smith & Nephew, Inc. v. Hologic, Inc. Mr. Lennie. Mr. Lennie. When you're ready. Good morning, and may it please the Court. This appeal involves two issues. A claim construction issue and an obviousness issue. Today, Smith & Nephew would like to focus on the claim construction issue and rest on the briefing on the obviousness issues. Unless, of course, the Court has questions on the obviousness issues. On claim construction, Smith & Nephew consistently relied on this Court's instruction that elements listed separately in a claim should be construed as distinct components of the invention and also that claim terms should be construed... Specification doesn't equate the two terms. Are you talking about the sections of the specification that says translation is reciprocation? So we addressed this in our briefing, but both of those sections of the specification, immediately before those sentences, the specification is describing the invention as rotating and translating. What the next sentence does is it explains that it's the translation that's reciprocating as opposed to the rotation. So there's a plausible explanation that is clarifying that when you're introducing the reciprocation in, the reciprocation could be referring to both rotation or the translation. And that's what both of those sentences do. They're both mirror images of each other. They both have the same prefatory sentence that describes the invention as reciprocating and translating. Do you think the Board's interpretation of those sentences, which differs, is also plausible? I don't. I think if you look at the rest of the specification, the skilled artist is going to look at the specification as a whole. And if you look at the rest of the specification, it distinguishes between the reciprocation motion and the translation motion. And that's confirmed by the drawings as well. So I think the strongest section of the specification that distinguishes the two is the discussion in column four, beginning at line 19, that describes first the reciprocation motion. So it indicates, column four, line 19, that the helical member 150 also moves in an axial direction, e.g. reciprocates, as a result of the interaction of the translation piece with the helical channels, as further described below. So the next four paragraphs are talking about how the translation piece interacts with the grooves in order to change direction of the cutting member. And it explains that the piece tracks the channels and then smoothly transitions from the left-hand groove to the right-hand groove, and that effectuates a change in direction. Specification in this section is also talking about how this is accomplished all through just a rotational force in a single direction and contrasting that with the ability to change direction, having the rotational force change direction itself. So at the very end of column four, and this is at line 59, column four, it signals a transition to talk about the translation. And it says, the coupling of the follower 145A to the helical channels 156 and 158 causes the helical member to also translate. And that statement is important for two reasons. First, it's signaling that the previous discussion is discussing the reciprocation, which is the change of direction of the member. And then it's also talking about that it also translates, so it's distinguishing between reciprocation and translation. And then the patent goes on, excuse me, the specification goes on in column five to discuss translation, and in particular, how the device cuts tissue. And it discusses figures seven, eight, nine, and ten, which are directed to the cutting portions of the device. And in the entire discussion in column five, it's talking about cutting. It mentions in three separate occasions that it cuts during translation. Reciprocation is never mentioned in column five. And this distinction between reciprocation and translation is confirmed when you look at the figures. So in particular, figures 3A and 3B explain and show to a skilled artisan that the interior central part of that helical member with the helical channels has a constant pitch that produces the translation motion. When the translation piece gets to either end of the helical member, it transitions and the pitch of the groove is changed to effectuate a deceleration, a momentary stop, and then a change in direction followed by acceleration. And then when the helical channel changes its pitch again, it's producing the pure translation motion. So what we have here is an invention where the claims are separately claiming rotation, reciprocation, and translation in contrast to the prior art that often had either rotation and reciprocation or rotation and translation. And by separately claiming each of these, it explains that you're effectively able to cut a particular type of tissue here, and it introduces the separate translation motion in between the reciprocation. And I think the board's broad constructions, which for reciprocation broadly encompasses all translation, reads the translation element out of the claim. And per this court's instruction, constructions are preferred that don't render claim elements superfluous, and the board really never addressed that issue. The board in its rehearing decision and in its initial decision explained that because the two terms were construed differently, reciprocation is back and forth and translation is just in the axial direction, that that resolved the issue. And what they said is that their constructions didn't render them to be mutually exclusive or redundant of each other. And even if that's true, it still doesn't resolve the issue of because reciprocation is broadly construed to include all translation motion, the translation element is rendered superfluous and is essentially read out of the claim. Can I turn you to one specific obviousness question? Yes. The Galloway, the analogous heart reference. Assuming we disagree with you on everything else, we find the claim construction okay, and we find all the other combinations okay, what claims does Galloway affect if we find it's not analogous heart? Is it unnecessary or do you know which claims it is? I have to look back at the board's decision on that rejection. I believe the Galloway rejection was rejection 8, capital in the view of Galloway, which was affirmed by the board. That affects claims 1, 2, 4 through 12, 19 to 22. Those claims are also covered by other combinations, are they not? I want to know, we agree with the board on everything else. Is there anything we have to reverse if we disagree with them on analogous heart? Was Galloway necessary to any rejection? I believe that the obvious rejections were duplicative and that Galloway didn't address a specific claim that wasn't addressed by the other obvious combinations. I thought that maybe you had one claim and it was claim 26 so you might want to check that when you sit down. Okay, absolutely. I think the board never addressed the issue of whether or not the translation element was rendered superfluous and I think that's the biggest problem here is that it's read out of the claims in two respects. First, the claim requires the simultaneous motion of rotation, reciprocation, and translation in response to a single rotational force but it also requires that the cutting occur during rotation and translation. Again, when translation is encompassed within the definition of reciprocation that cutting limitation has no meaning at all. It's read out of the claim because if reciprocation necessarily includes translation, you've now converted that limitation into a limitation where cutting can occur during rotation and reciprocation or translation so it doesn't further meaningfully restrict the claim and the board's construction does not sufficiently distinguish between the different motions that are described here. I misspoke. I meant claims 20-22. 20-22. Okay, we'll take a look at that. Again, I think our position is that a skilled artisan looking at the specification as a whole and looking at the drawings would understand that there are in fact three separate motions that are being described here and that there's a distinction between the axial translation that occurs when the follower is tracking in the middle portion of the helical groove and that the specification describes how the deceleration and the stopping and the turning around and the acceleration and that's confirmed by the drawings that show the change in pitch and resulting in a different motion that is distinct and separate from the translation motion when the cutting has occurred and that's clear from the specification. And I'm getting close to my rebuttal time so I'll save the rest of the time for rebuttal. Okay, thank you. Mr. Wolf. Thank you. May it please the court, your honor is correct I believe it's claim 20 that is unique to the Galloway reference I think everything else overlaps. 21 was not an issue. I would need to double check on 22 but it's either 20 or 20 and 20, your honor. 20 is the lead one that's Galloway unique. Talking briefly about the claim construction issue counsel started by saying what the motivation was for the sentences. Translation is reciprocation and translating is reciprocating. Whatever the motivation was, whatever the backstory the subtext, the sentences say what they say. Translation is reciprocation and reciprocating is translating. And of course later in the patent we're told separately that there is simultaneous rotation and translation on the one hand and simultaneous rotation and reciprocation. So in yet another way the interlocking nature of the claims I think that's if I remember high school algebra that's the transitive property A equals B and B equals C So we're told time and again that these motions happen, they happen simultaneously Let's go to the product I think that it's generally accepted that there is a version, the most precise version of this device which is not shown in the prior art Is the problem that the claims that have been presented at least the broader claims nonetheless read on the prior art and are not sufficiently restricted to the precise combination of translation and rotation? Your Honor, here's where I think it's important to separate the helix claims which are everything up to claim 32 not including 32 and then 32 and 33 which don't mention the helix So when you say that the claims aren't precisely in the prior art I would respectfully disagree in saying claims 32 and 33 are precisely in the prior art Is that the issue that's before us that the claims that aren't limited to the helix are sufficiently broad to read on the prior art even though they're also presumably directed to this specific device? Claims 32 and 33 take out the helix requirement and by taking those out they're just claiming middle which well predated the critical date of the past So that takes care of those claims What about the rest of them? The other claims then require the combination I don't know if Your Honor wants to talk about Galloway at this point for claim 20 or not What we have as to the obviousness claims and this is everything up to 32 we have as clear a case for a motivation to combine All we're doing is saying take middle which plainly anticipates 32 and 33 but doesn't use a helical groove it uses something like this All we do is change this and I know that isn't reflected in the written record and change it to a helix and we have multiple prior art references that show a helix in very similar contexts particularly Kaplan and Sadat and for motivation to combine it's hard to see how we could have a clearer motivation to combine  In middle itself we have the motivation within the references itself middle at column 7, line 26 says varying the number of forward and rear bends of cam groove can vary the number of complete reciprocations per revolution You're assuming that Galloway is accepted as a reference Perhaps it would be helpful to talk about the claims that are more limited Sure So we have really 3 sets of claims We have 32 and 33 which are plainly anticipated by middle Then we have a whole set of claims other than claim 20 and perhaps 22 We have a whole set of claims that only require a combination of middle with Kaplan or Sadat which are also tissue cutting medical devices plainly within the same field that have the helical cutter Then we have claim 20 which is just talking about the shape of the follower the thing that follows the groove That isn't found in Kaplan or Sadat It is found in Galloway So that's why Galloway has to be brought into discussion for that third set of claims So maybe I'll work up the chain and start with Galloway What's your answer to their argument that the position that you're presenting is really one of hindsight Once you see what they actually did in this crowded field because they're not the first There are several who have tried to solve this problem with one form or another of device but they didn't do exactly what these guys did and after we see what they did let's assume I don't know but assume that there's something desirable about their final product or else we wouldn't be fighting about it that only with hindsight do you put together this piece and that piece and say, of course, any fool would have done it Just to be clear, at trial the only thing that was at issue were the claims that were plainly anticipated For completeness, we talked about the obviousness combination so when you say what other people did we weren't accused at trial of doing the claims that were only obviousness directed So what would happen if for whatever reason, based on Galloway that some of the claims survive the anticipation rejection Is this a matter of going back to the court? For purposes of our case the verdict would be overturned because it was only based on the claims that are anticipated but obviously, for our sake and any other developer out there who's facing the prospect of all these other claims if they're invalid, we should deal with them now The PTAB doesn't just deal with claims that are at issue in litigation it deals with claims that are in the same patent We brought it because of claims 32 and 33 but while we're here, let's talk about the other claims So, Middle and Kaplan each say, Middle at column 7, line 26 and Kaplan at column 15, line 30 each say, vary the shape of the groove if you want to change the relationship between translation, reciprocation on the one hand and rotation on the other. They say mix and match This is no different than you have a drill with a Phillips head bit saying if you want to do masonry, change the bit out and then you have a masonry drill that says if you want to go into wood, change the bit out We have each reference pointing to the shape of the grooves and say, shape of groove, do whatever you want and in fact, Kaplan goes so far as to say why you would want to do it. Prime deficiencies of the prior art is insufficient tissue extraction having to do with the throw of the cutting device how far it goes versus how fast you want it to turn. So we're told time and again in Appellant's brief that there's insufficient motivation to combine. The motivation is talked about within the references itself. We don't need to use an expert's testimony And apparently you don't care about this because this is not the basis for your prevailing in district court but the Galloway reference. Why is that analogous? I mean, under our test in Clay in those cases I don't understand how it's regionally pertinent to the same problem So, understood. To be clear, Your Honor what we're relying on or what we relied on what we believe the PTAB relied on was the second prong of the In Re Brigio test where what is analogous? A could be the same field of endeavor We're not talking about that. What we're talking about is it reasonably pertinent to the particular problem. But the problem here is cutting a certain type of tissue I mean, this seems like the board is just searching for something that has this particular, you said it was some kind of shape on the end or something, whatever it is Galloway is not a drill It's not a cutter. It's to wind fiberglass Your Honor, I respectfully disagree with that assessment of what the problem is and I think the best evidence that my version might be right is to look at the final reference in the 459 patent itself. If we look And in fact, at trial we were told this was the aha moment If you look at the other publications and most of the patents there are medical device patents But the final thing, the aha moment is, quote, fishing reel produced and sold by Shimano of Japan into the US Wait, hang on. Where are you looking? I'm looking on page 2 Of the patent? Of the patent So, appendix 49 Sorry, Your Honor, I jumped a bit Appendix 49 Lower right hand corner Well, it's mostly at the top of the page You're saying the fact that the patent examiner looked at a fishing reel prior art reference shows that this is analogous? It wasn't that the patent examiner looked at it That was what the patentee said This is what Where did he say that? He said that in the trial court So we don't have that. You just have their citation here Yes, correct So what about the fact that cases like Oedeker say that it has to be directed to the particular problem to which the inventor was trying to address Which here, looking at the name of the patent the part of the patent that talks about This patent is directed to blah blah blah It's all directed to the idea that you want to cut rigid tissue Yes, but I think that's one level Reasonable minds can differ on this Let's suppose I'm coming up with an oil well drill And I need the bit to go really fast Is the problem that I need to get a bit to go really fast Is that how we define the problem? Or is the problem that I need to get through basalt to get to oil I would say the former is the more accurate description of what the problem to be solved is Here, the issue Because the cutting of the tissue, the specific tissue at issue isn't in the claim What we're trying to do is get a certain motion It is in the claim. It's in the preamble, isn't it? But not the semi-soft, semi-rigid But it is the idea of cutting tissue Let me just back up I don't think I asked my question well My question is, as a legal matter Given that we're trying to There's necessarily a hindsight determination When you're looking at obviousness But we don't want to rely unfairly And the question is, would one of ordinary skill in the art Not the inventor. The inventor went to fish and meals Because he already knew what he was looking for But would one of ordinary skill in the art Faced with the problem That the inventor was faced with Go to glass threading Would it go to the prior art Like this particular reference That was relied on How do you define the problem? I think it's a legal question Can we look to district court testimony To see whether there were other problems That the inventor, as he was developing his invention Encountered? Or are we supposed to look at the problem That the patent is describing? That's a really interesting question, Your Honor And I don't have a facile answer to it I think it is a challenge My instinct says That if you're developing a medical drill And you want it to go fast for a particular reason It is within the ambit of what you're trying to do And remember, one of skill in the art here Is someone with an engineering degree So it's not specific to this area You're assumed to be an engineer That you would look at what Black and Decker is doing To make drills go fast Well, if this was a drill Even if it wasn't a medical drill You might have a better argument It's not even a drill It wraps some kind of fiberglass Or something around I can't figure out what it actually does But it's certainly not a drill It's not in the medical field It's a step too far That the board found obvious combinations Based upon other medical devices And did it for this one claim And looked somewhere else But it really seems like it's a reach I take your point, Your Honor And to be candid, below we argue That single reference and obviousness Is our lead argument on this point Because the notion of having an arch bridge shape follower And frankly as an alternative ground for affirmance That notion of having an arch bridge follower That's not great shakes here And the fact that the examiner rejected single reference obviousness And said, I'm not going to accept that it's in the toolkit I need you to put forward a specific reference And this is the one they latched on to I take your point, Your Honor And I'm not asking you to radically expand the Bigeo line of questioning But when we have a relatively simple technology Like a drill And we're looking for bits and pieces of plastic In particular shapes The shortcut And that may be the way As opposed to saying Everybody knew it's skill in the art That you could shape a follower as a ball or a stick Or in this case an arch bridge That might have been the cleaner way to do it I take your point Unless the panel has any other questions I think we're okay Thank you, Mr. Wolf Mr. Levy So I think we have confirmed That claims 20 and 22 are unique to the Galloway reference That those require the Galloway reference Claims 20 and 22 And claim 21 is not at issue Before the PTAB I think 21 was at issue 21 covered by a different combination of prior art Yes But two points on the Galloway issue I think that the board did improperly Define the problem to be solved Extremely broadly by removing any reference To surgical devices, cutting tissue Cutting tissue at all And one point on that issue Is that the examiner actually did define The problem to be solved In line with the way Smith and Nephew describes it So the examiner described the problem to be solved As how to initiate and cut And remove large volumes of semi-rich tissue So that was the examiner's description Of the problem to be solved The board, however, modified that And broadly expanded it To just simply refer to The use of a rotational force To impart different types of motion So it removed all reference to cutting tissue Or a surgical device whatsoever But I do want to go back to the independent claim 32 And describe the novelty of that claim Over the middle reference And I think it's important to recognize That the middle reference is imparting A motion that is completely different Than the motion that's imparted by the helical members That are shown in Figures 3a and 3b So the middle device has a continuous groove That is constantly curved And it doesn't have any straight sections And the Hologix expert acknowledged this And explained that the middle device Could be modified if you had straight sections That would impart a constant velocity translation motion So Hologix acknowledged That that would be under Smith and Nephew's Proposed instruction for translate But they acknowledged that middle would need to be modified In order to have the separate reciprocation and translation motions So that's the novelty of claims 32 and 33 Over the middle reference And again, we are relying on the helical structure That's shown in the specification But we're not reading the helical structure into the claims And that's demonstrated by the fact That Hologix expert is contending That the middle device, which does not utilize the helical structure at all That the middle device could be modified To have straight segments Which would impart this separate translation motion And what that demonstrates Is that there's another structure out there That's non-helical that could satisfy the claims So it's not that we're reading the helical structure into the claims A device that doesn't use the helical structure Could still impart the separate rotation, translation, and reciprocation And again, that's emphasized in the specification That discloses how the cutting occurs during translation And if you look at the specification It explains that the cutting window Is where the cutting happens The tissue is in the presence of the cutting window The specification also explains That the length of the cutting window Is shorter than the overall length of the helical member So the translation is happening And the cutting is happening In that middle portion of the helical member Where the helical groove is at a constant pitch Which imparts a steady translation motion Once you get to the ends of the helical structure The pitch of those grooves changes And that's when the reciprocation starts The reciprocation is the act of slowing down Stopping, turning around, and speeding back up But again, the cutting happens at a different time The specification is clear that the cutting happens in column 5 In three different places it describes the cutting happening During translation And a skilled artisan looking at the specification as a whole Would understand the claims are separately reciting Rotation, translation, and reciprocation This court has said, construe the terms So that you don't end up rendering a claim term superfluous That's exactly what the board did The board never addressed our argument About how translation is being read out of the claim And we believe that the specification as a whole Does convey to a skilled artisan That you have three separate motions And again, the two sections of the specification That are argued and that the board relied on As conflating translation and reciprocation Are explained, as we did in our briefing And as I did earlier They're putting in context and explaining What motion is reciprocating Because you absolutely can have a rotational motion that would reciprocate You can have a translation motion that can reciprocate So both of those sentences are explaining Which of the motions is reciprocating So I don't think that it's proper to look at The sentence, translation is reciprocating Out of context and rely simply on that statement To say that the specification fails to distinguish Between the reciprocation and the translation motion If you read the specification as a whole If you look at the way the specification discusses reciprocation And then discusses translation And if you look at the drawings and the figures In conjunction with that disclosure A skilled artisan would understand that you do in fact Have three distinct motions here and that's what we've claimed And as I've indicated That is a different motion than what the middle reference discloses The middle reference is simply going back and forth In a constant state of deceleration, acceleration Deceleration, acceleration There's no separate translation motion And as I said, Kolodzik's expert acknowledged That if you wanted to get that separate translation motion You'd have to modify it to put straight segments in That's not what middle teaches Middle doesn't anticipate those claims And we respectfully request that you reverse the board's claim construction To give full and in fact meaning to each of these terms Rotation, translation, reciprocation Any questions? Thank you, thank you both The case is taken into submission